INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-00 012

NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a court
in the Sixth Circuit. If cited, a copy must be served on other
parties and the Court.
This notice is to be prominently displayed if this decision
is reproduced.

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 02-3921

**F I L E D**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MAR - 3 2004

LEONARD GREEN, Clerk

PR DIAMONDS, INC., et al.,                      )

    Plaintiffs-Appellants,                      )

v.                                              )

JOHN P. CHANDLER, et al.,                       )

    Defendants-Appellees.                       )

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO, WESTERN DIVISION

O P I N I O N

**BEFORE:**    **COLE and CLAY, Circuit Judges; QUIST, District Judge.***

    **GORDON J. QUIST, District Judge.**  Plaintiffs-appellants in this securities fraud case are investors in

the stock of Intrenet, Inc. ("Intrenet" and the "Company").  Defendants-appellees are two Intrenet officers (the

"Individual Defendants") and Intrenet's outside auditor, Arthur Andersen LLP ("Andersen").  Plaintiffs' amended

consolidated class action complaint (the "Complaint") alleged that the Individual Defendants and Andersen

committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),

and Rule 10b-5 promulgated by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b-5.  In

addition, Plaintiffs alleged that the Individual Defendants were liable as control persons under Section 20(a) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).  The district court dismissed the Section 10(b) and Rule 10b-5

claims for lack of specific allegations giving rise to a strong inference of scienter, and later granted judgment on

the pleadings on the Section 20(a) claim for failure to state a predicate securities fraud claim against the Company.

Plaintiffs now appeal the district court's decisions.  For the reasons set forth below, we affirm.

## I. Background

    Intrenet was an Indiana corporation with its executive offices and principal place of business in Milford,

Ohio.  The Company operated as a holding company for four truckload carrier subsidiaries (Roadrunner Trucking,

---

    *The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan,
sitting by designation.

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

Inc., Roadrunner Distribution Services, Inc., Eck Miller Transportation Corp., and Advanced Distribution System,

Inc.) and a brokerage logistics operation (INET Logistics, Inc.).  Intrenet's consolidated financial statements

included all five of these subsidiaries.  A publicly-held company, Intrenet was registered with the Securities

Exchange Commission and its stock traded on the NASDAQ National Market System.  Formed in 1983, Intrenet

was once one of the largest public flatbed carriers in North America.

The two Individual Defendants, John P. Chandler and Eric C. Jackson, were Intrenet officers and directors.

Chandler was President and Chief Executive Officer since June 12, 2000.  Prior to that time, Chandler was, at all

relevant times, Executive Vice President and Chief Operating Officer of the Company.  Throughout the class period

asserted in this action, Chandler was also a director of Intrenet.  Jackson was Chairman of Intrenet's Board of

Directors from June 12, 2000, to December 19, 2000.  Prior to his appointment as Chairman of the Board, Jackson

was President and Chief Executive Officer.  Jackson was also a director of the Company since 1993.  Defendant

Arthur Andersen LLP served as Intrenet's outside auditor.  In that capacity, Andersen audited the Company's

financial statements for the years ending December 31, 1998, and December 31, 1999.

The alleged 20-month class period begins with an Intrenet press release issued on February 19, 1999,

reporting the Company's financial results for the fourth quarter and year ending December 31, 1998.  Intrenet issued

additional financial statements and press releases over the course of the class period.  The class period ends with

Intrenet's press release dated October 13, 2000, in which the Company announced that it was conducting a review

of the accuracy of its financial statements, focusing on the Advanced Distribution System ("ADS") subsidiary.  The

press release stated that pending the completion of the review, Intrenet's 1998 and 1999 year-end financial

statements should not be relied upon, and that the Company expected to reduce its net income by approximately

$1.3 million.  NASDAQ trading in Intrenet stock was halted on that same day, never to resume.  On October 18,

2000, Intrenet issued another press release indicating that the internal audit showed $1.3 million in unrecorded

expenses at ADS which could result in restatements of Intrenet's 1998, 1999, and first and second quarter 2000

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

financial statements. The press release also stated that the individual believed to be responsible for the accounting

issues was no longer with the Company.

On January 2, 2001, Intrenet announced that effective immediately it and its subsidiary trucking companies

would cease operations, lay off most employees, and direct the liquidation of assets. Intrenet said that after a

thorough review of the Company's business, industry dynamics, and all available options, it was determined that

issues related to fuel prices, driver retention, and the unwillingness of many customers to accept higher rates would

preclude the Company from achieving operational profitability in the foreseeable future. Also, Intrenet noted that

it lacked adequate capital to execute its business plan. CEO Chandler further stated that the previously announced

accounting issues relating to the ADS subsidiary had little impact on the decision to suspend operations and

liquidate. On January 19, 2001, Intrenet filed for Chapter 11 bankruptcy protection.

Intrenet stockholder Hirsch Seidman initiated this action in January 2001 in the United States District Court

for the Southern District of Ohio. Seidman sued both individually and on behalf of all other similarly situated

public investors who purchased Intrenet common stock during the class period (February 19, 1999, through October

13, 2000) and incurred losses when the stock lost value as a result of the October 13, 2000, press release and

subsequent collapse of the Company. In June 2001, the district court appointed P.R. Diamonds, Inc. as lead

plaintiff. Plaintiffs filed an amended consolidated class action complaint (the "Complaint") on August 17, 2001,

to add Andersen as a defendant. Pursuant to this Complaint, Plaintiffs asserted claims under 15 U.S.C. § 78j(b)

("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") against the Individual Defendants and Andersen, as

well as claims of "control person" liability under 15 U.S.C. § 78t(a) ("Section 20(a)") against the Individual

Defendants.

Plaintiffs' Complaint alleges that Intrenet's financial statements and press releases during the asserted class

period contained material misrepresentations and omissions masking the Company's true financial condition,

making them false and misleading. According to Plaintiffs, these fraudulent financial statements and press releases

3

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

inflated the Company's financial results and growth, leading to artificial increases in its stock price. The district court accurately summarized the Complaint's allegations in the following manner:

(1) Intrenet's financial results and growth were artificially inflated;

(2) Although Intrenet represented that its financial statements were prepared in compliance with generally accepted accounting principles ("GAAP"), they were not:

(a) the financial statements failed to reconcile inter-company transactions among Intrenet's five subsidiaries;

(b) the financial statements failed to record day-to-day operating expenses;

(c) the financial statements failed to account for uncollectible receivables and understated receivable reserves;

(d) the financial statements failed to record an impairment in the value of Intrenet's assets; and

(e) the financial statements failed to fully disclose the significant risks and uncertainties associated with deficiencies in the company's internal control and accounting system; and

(3) Intrenet's financial statements, which incorporated the financial results of its five subsidiaries, artificially inflated the net income and earnings of its ADS subsidiary.

In addition to the aforementioned purported omissions and misrepresentations, the Complaint alleges that Intrenet's public statements included false and misleading language painting an unduly rosy picture of the Company's financial situation. For example, Intrenet claimed it was making "solid strides" and "positive progress" at the time when Plaintiffs allege losses were far in excess of those reported. Intrenet also announced a plan to increase productivity and eliminate expenses and liabilities when Plaintiffs allege it was artificially inflating its earnings.

With respect to the Individual Defendants, the Complaint asserts that as top-level Intrenet executives and control persons, they knew of or recklessly disregarded the alleged misrepresentations and omissions. With respect to Intrenet's outside auditor, the Complaint posits that Andersen issued false and misleading audit reports stating that Intrenet's financial statements fairly represented the Company's financial condition and complied with GAAP.

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

Plaintiffs also allege that Andersen failed to conduct its audits in compliance with generally accepted auditing standards ("GAAS").

On October 10, 2001, the Individual Defendants filed a motion to dismiss Plaintiffs' case under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Andersen filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 12, 2001. On November 21, 2001, Plaintiffs filed a consolidated memorandum opposing Defendants' motions to dismiss and, in the alternative, requesting leave to amend their Complaint. The district court issued an order on February 26, 2002, dismissing Plaintiffs' claims under Section 10(b) and Rule 10b-5 against the Individual Defendants and Andersen for lack of specific allegations giving rise to a strong inference of scienter as required by the Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. § 78u-4 (the "PSLRA"). However, the district court denied the motion to dismiss the Section 20(a) control person claim against the Individual Defendants on the grounds then asserted. On May 23, 2003, the Individual Defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the remaining Section 20(a) claim. The district court granted the motion on July 17, 2002, concluding that Plaintiffs failed to state an underlying securities fraud claim against Intrenet as required by Section 20(a), denying as moot Plaintiffs' motion for class certification, and ordering the action closed. In neither of its opinions did the district court discuss granting Plaintiffs leave to amend. On August 4, 2002, Plaintiffs filed a timely notice of appeal with this Court.

In this appeal, Plaintiffs present the following issues for review:

(1) Whether the district court erred in dismissing Plaintiffs' Section 10(b) and Rule 10b-5 claims against the Individual Defendants on the basis that Plaintiffs' Complaint does not adequately allege that the Individual Defendants acted with scienter.

(2) Whether Plaintiffs' Section 20(a) claims against the Individual Defendants can proceed despite the absence of the Company as a defendant.

(3) Whether the district court erred in dismissing Plaintiffs' Section 10(b) and Rule 10b-5 claims against Defendant Arthur Andersen on the basis that Plaintiffs' Complaint does not adequately allege that Andersen acted with scienter.

5

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

(4)  Whether the district court erred in dismissing the case without affording Plaintiffs the opportunity to amend their Complaint.

## II.  Standard of Review

This Court reviews *de novo* a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6).  *See Valassis Communications v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996).  The same *de novo* standard applies to review of a district court's judgment on the pleadings under Fed. R. Civ. P. 12(c).  *See Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).  The Court must accept as true "well-pleaded facts" set forth in the complaint.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  Construing the complaint in a light most favorable to the plaintiffs, we must determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief.  *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993).  Finally, we review a district court's denial of leave to amend for abuse of discretion, *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 671 (2003), except in cases where the district court bases its decision on the legal conclusion that an amended complaint could not withstand a motion to dismiss, where the review is *de novo*. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1188 (6th Cir. 1996).

## III.  Discussion

**A.      Section 10(b) and Rule 10b-5 Claims Against the Individual Defendants**

Plaintiffs first contend that the district court erred when it dismissed the Section 10(b) and Rule 10b-5 claims against the Individual Defendants on the basis that the Complaint lacked specific allegations giving rise to a strong inference of scienter, as required under the PSLRA. Plaintiffs challenge the district court's holding, arguing that the allegations of the Complaint, when considered in their totality, do in fact give rise to a strong inference that the Individual Defendants had either actual knowledge of, or at least recklessly disregarded, the alleged material misrepresentations and omissions contained in Intrenet's statements to the investing public. As we explain in the discussion that follows, we hold that Plaintiffs fail to meet the standards for pleading scienter on the part of the

6

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

Individual Defendants and, therefore, the Section 10(b) and Rule 10b-5 claims against them were properly

dismissed.

### 1.    Governing Law – Pleading Standards

Section 10(b)[1] of the Exchange Act and Rule 10b-5[2] promulgated thereunder prohibit "fraudulent, material

misstatements or omissions in connection with the sale or purchase of a security." *Morse v. McWhorter*, 290 F.3d

---

[1] Section 10 provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -

....

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §78j.

[2] Rule 10b-5, prescribed by the SEC under Section 10(b), provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

795, 798 (6th Cir. 2002).  In order to state a claim pursuant to Section 10(b) and Rule 10b-5, "a plaintiff must allege,

in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with

scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury.  *Hoffman*

*v. Comshare, Inc. (In re Comshare, Inc. Secs. Litig.)*, 183 F.3d 542, 548 (6th Cir. 1999).  Adding to the Federal Rule

of Civil Procedure 9(b) requirement that fraud allegations be stated with particularity, the PSLRA requires that the

complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and belief, the

complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

The appeal before us centers on whether the Complaint adequately pleads the scienter element of a Section

10(b) and Rule 10b-5 claim.  In reviewing the district court's decision dismissing the Complaint, we must first

examine the meaning of "scienter" in the securities fraud setting.  The Supreme Court has defined "scienter" as "a

mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193

n.12, 96 S. Ct. 1375, 1381 n.12 (1976).  In securities fraud claims based on statements of present or historical fact -

such as the claims Plaintiffs bring in this case - scienter consists of knowledge or recklessness.[3]  *Helwig v. Vencor,*

*Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (en banc).  Recklessness is defined as "highly unreasonable conduct which

is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least

be so obvious that any reasonable man would have known of it."  *Mansbach v. Prescott, Ball & Turben*, 598 F.2d

1017, 1025 (6th Cir. 1979) (quoted in *Miller*, 346 F.3d at 672).  Recklessness is "a mental state apart from

---

[3] Plaintiffs in this case do not allege forward-looking statements, to which the PSLRA applies different scienter requirements pursuant to a safe harbor provision.  Forward-looking statements include projections and estimates of a company's future economic performance, including statements related to revenues, earnings per share, income, dividends, capital expenditures, capital structure, and other financial items.  15 U.S.C. § 78u-5(i)(1).  As to forward-looking statements accompanied by meaningful cautionary language, the PSLRA makes the state of mind irrelevant.  15 U.S.C. § 78u-5(c)(1)(A).  In the case of forward-looking statements that are not accompanied by meaningful cautionary language, the required state of mind is actual knowledge of the statements' false or misleading nature.  15 U.S.C. § 78u-5(c)(1)(B).

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

negligence and akin to conscious disregard." *Comshare*, 183 F.3d at 550. *See also Id.* at 550 n.7 ("As we have

observed, federal appellate courts have long held the view that, for the purposes of securities fraud, 'recklessness'

that is far from negligence and closer to a 'lesser form of intent' constitutes scienter.") (quoting *Sanders v. John*

*Nuveen & Co., Inc.*, 554 F.2d 790, 793 (7th Cir. 1977)).

Next, we examine the special requirements for pleading scienter in federal securities fraud cases such as

this. As with all fraud claims, Federal Rule of Civil Procedure 9(b) applies to pleading a defendant's state of mind,

allowing that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."

However, Congress amended the Securities Exchange Act of 1934 through passage of the PSLRA, heightening the

standard for pleading scienter in a securities fraud case:

> In any private action arising under this title in which the plaintiff may recover money damages only
> on proof that the defendant acted with a particular state of mind, the complaint shall, with respect
> to each act or omission alleged to violate this title, *state with particularity facts giving rise to a*
> *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added). The PSLRA provides that if a plaintiff does not meet this requirement,

a court may, on any defendant's motion, dismiss the complaint. *See* 15 U.S.C. § 78u-4(b)(3). "As courts have

observed, the PSLRA did not change the scienter that a plaintiff must prove to prevail in a securities fraud case but

instead changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss." *Comshare*,

183 F.3d at 548-49 (citation omitted).

As the foregoing authorities make clear, a plaintiff may survive a motion to dismiss by pleading with

particularity facts giving rise to a strong inference that the defendant acted with knowledge or recklessness. In other

words, not only must the complaint make particular factual allegations, but the inference of scienter which those

allegations generate must be strong. In *Helwig*, we provided a definitive explanation of the meaning of a "strong

inference":

> Inferences must be reasonable and strong - but not irrefutable. "Strong inferences" nonetheless
> involve deductive reasoning; their strength depends on how closely a conclusion of misconduct
> follows from a plaintiff's proposition of fact.    Plaintiffs need not foreclose all other

9

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder.
Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most
plausible of competing inferences.

251 F.3d at 553. The PSLRA does not change the Rule 12(b)(6) maxim that when an allegation is capable of more

than one inference, it must be construed in the plaintiff's favor. *Id.* ("Our willingness to draw inferences in favor

of the plaintiff remains unchanged by the PSLRA."). However, the "strong inference" requirement means that a

plaintiff is entitled to only the most plausible of competing inferences. *Miller*, 346 F.3d at 673.

We have previously stated that the factors enumerated in the following list, while not exhaustive, are

probative of scienter in securities fraud actions:

(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal
reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent
statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery
by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and
the company's quick settlement of that suit; (6) disregard of the most current factual information
before making statements; (7) disclosure of accounting information in such a way that its negative
implications could only be understood by someone with a high degree of sophistication; (8) the
personal interest of certain directors in not informing disinterested directors of an impending sale
of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries
or jobs.

*Helwig*, 251 F.3d at 552 (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999)).

2.    **The Complaint Fails to Raise a Strong Inference of Scienter**

Plaintiffs contend that the district court erred in concluding that the Complaint failed to allege facts raising

a strong inference of the Individual Defendants' scienter. The gist of Plaintiffs' argument is that the district court

mistakenly viewed the allegations of the Complaint in a piecemeal fashion, rather than considering the totality of

the circumstances pled. As Plaintiffs correctly point out, this Court employs a totality of the circumstances analysis

whereby the facts argued collectively must give rise to a strong inference of at least recklessness. *See In re Telxon

Corp. Secs. Litig.*, 133 F. Supp. 2d 1010, 1026 (N.D. Ohio 2000) ("Thus, the Sixth Circuit employs a form of

'totality of the circumstances' analysis; this Court, accordingly, declines to examine plaintiffs' allegations in

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

piecemeal fashion and, will instead, assess them collectively to determine what inferences may be drawn therefrom.") (citing *Comshare*, 183 F.3d 542 at 549-52).

Reading the Complaint in its entirety, Plaintiffs maintain, establishes a strong inference that throughout the class period the Individual Defendants knew of serious accounting improprieties at Intrenet and the effect such improprieties were having on the Company's financial condition, or were reckless in not knowing or in disregarding this information. Furthermore, Plaintiffs contend that after the outside consultant discovered the accounting improprieties, the inference of scienter is not merely strong, but virtually inescapable. Despite this awareness, Plaintiffs argue, the Individual Defendants continued to make materially false and misleading statements and omissions in Intrenet's financial statements and press releases.

Specifically, Plaintiffs argue that a strong inference of the Individual Defendants' scienter arises when viewing in totality the following allegations in the Complaint: the nature and magnitude of the accounting improprieties at Intrenet; other "red flags" signaling the accounting errors; the Individual Defendants' access to Intrenet's financial information by virtue of their positions at the Company; the fact that the accounting improprieties occurred in areas touted as the Company's key areas of focus; the Individual Defendants' motives and opportunities to commit fraud; the hiring of an outside consultant; and the outside consultant's discovery of internal control deficiencies and accounting irregularities.

Our examination of each of these clusters of allegations shows that, even viewed collectively, they fail to adequately plead scienter on the part of the Individual Defendants. To reiterate, we do not in this Opinion address whether, in light of the alleged accounting irregularities at Intrenet, the Company's financial statements and press releases materially misrepresented Intrenet's true state of financial affairs. The issue before us is limited to the scienter inquiry: that is, whether Plaintiffs have met their burden of pleading specific facts which, when viewed together, persuade us that the most plausible conclusion to draw is that the Individual Defendants must or should have known about the problems and nevertheless knowingly or recklessly made the allegedly misleading public

11

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

statements. While the allegations no doubt merit drawing *some* inference of scienter, that is not enough. The PSLRA requires the Complaint to establish a *strong* inference - the most plausible of competing inferences - that the Individual Defendants acted at least recklessly, meaning that their states of mind were reflected in highly unreasonable conduct constituting an extreme departure from the standards of ordinary care so obvious that any reasonable person would have known of it. Here, the Complaint fails.

In the following discussion, we consider each allegation Plaintiffs offer in their effort to plead scienter. As we have noted before, "recklessness in securities fraud is an untidy, case-by-case concept." *Helwig*, 251 F.3d at 551 (citing *Mansbach*, 598 F.2d at 1025). "This necessarily involves a sifting of allegations in the complaint." *Id.* Accordingly, we sift Plaintiffs' allegations individually and then aggregate the nuggets of inference they generate, concluding in the end no strong inference arises.

### (a)    Accounting Improprieties

Plaintiffs contend that the Complaint's allegations of Intrenet's improper accounting practices and internal control deficiencies comprise circumstantial evidence supporting a strong inference of the Individual Defendants' scienter. Plaintiffs suggest that none of these accounting "maneuvers" had any facially valid purpose and, therefore, they support the inference that the Individual Defendants harbored an intent to artificially inflate the Company's operating results. The alleged accounting improprieties include: failure to reconcile inter-company transactions; understatement of day-to-day operating expenses; accounting for uncollectible receivables and understatement of Intrenet's accounts receivable reserve; failure to record an impairment in the value of assets; failure to disclose significant risks and uncertainties; arbitrarily applying cash receipts against the oldest outstanding receivable; and recording journal entries in violation of the Foreign Corrupt Practices Act, without support or backup documentation. According to Plaintiffs, the nature and magnitude of the obvious, pervasive accounting problems at Intrenet support a strong inference that the Individual Defendants knew of or recklessly disregarded these problems when making statements to the investing public.

12

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

In *Comshare*, we held that "[t]he failure to follow GAAP is, by itself, insufficient to state a securities fraud claim." 183 F.3d at 553 (internal citations omitted). A complaint alleging accounting irregularities fails to raise a strong inference of scienter if it "allege[s] no facts to show that Defendants knew or could have known of the errors, or that their regular procedures should have alerted them to the errors sooner than they actually did." *Id.* We noted in *Comshare* that a strong inference of scienter cannot be drawn from speculative and conclusory allegations of GAAP violations. *Id.* However, as discussed below, some courts have recognized that an inference of knowledge or recklessness may be drawn from allegations of accounting violations that are so simple, basic, and pervasive in nature, and so great in magnitude, that they should have been obvious to a defendant.

Courts have described the type and scope of accounting errors that, in combination with other factors, support a strong inference of scienter. For example, Plaintiffs cite *In re MicroStrategy, Incorporated Securities Litigation*, 115 F. Supp. 2d 620 (E.D. Va. 2000) for the proposition that violations of simple accounting rules are obvious, and an inference of scienter becomes more probable as the violations become more obvious. The complaint in *MicroStrategy* alleged that accounting violations caused the company to report aggregate "record" net income of $18.9 million over three years, when in fact the company incurred a net loss for those years of more than $36 million. *Id.* at 636. In addition, the company overstated its revenues over the same period by a total of $66 million. *Id.* After reiterating the maxim that allegations of accounting violations standing alone can never lead to a strong inference of scienter, *MicroStrategy* nevertheless intimated that the nature of the misapplication of accounting principles - in terms of number, size, timing, frequency, and context - is relevant circumstantial evidence of a defendant's state of mind. *Id.* at 635. Turning to the facts before it, the court concluded that the "magnitude," "pervasiveness," and "repetitiveness" of the company's violations of "simpl[e]" accounting principles "serve[d] to amplify the inference of scienter." *Id.* at 636. The court explained:

> Indeed, common sense and logic dictate that the greater the magnitude of a restatement or violation of GAAP, the more likely it is that such a restatement or violation was made consciously or recklessly. This, of course, is a matter of degree, but it cannot be gainsaid that some violations of GAAP and some restatements of financials are so significant that they, at the very least, support

13

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

     the inference that conscious fraud or recklessness as to the danger of misleading the investing public was present. *Cf. In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999) ("[P]laintiffs allege 'in your face facts,' that cry out, 'how could [defendants] not have known that the financial statements were false.'") In this case, the alleged GAAP violations and the subsequent restatements are of such a great magnitude – amounting to a night-and-day difference with regard to MicroStrategy's representations of profitability – as to compel an inference that fraud or recklessness was afoot.

*Id.* at 636-37 (footnotes omitted).

     Other cases likewise indicate the drastic nature and magnitude necessary for accounting violations to support a strong inference of scienter. In *Telxon*, the court distinguished the "far more egregious" facts before it from those alleged in *Comshare*, where we held that the alleged accounting errors did not support a strong inference of scienter. 133 F. Supp. 2d at 1031. "Telxon, allegedly, overstated its revenues *for years*, did so by over $20 million in a *single* quarter and reported *profits* when it should have been reporting *losses* over *several different* quarters." *Id.* (italics in original) In addition, the accounting errors appeared to be fortuitously timed, resulting in revenue increases at times when the company foretold that it would return to profitability, or when the company needed to show profits to justify rejecting a takeover bid and to win a proxy battle. *Id.* The *Telxon* court also noted the defendants' training, background, and access to information. "Thus, the nature and number of the alleged accounting manipulations, coupled with the magnitude of the difference between the originally reported financial disclosures and their restatements, and the fact that the misstatements escalated dramatically in the face of the [competing offer and proxy battle]," taken in conjunction with the remaining allegations in the complaint, convinced the court that the plaintiffs had adequately alleged scienter. *Id.*

     In contrast to the aforementioned cases, the accounting irregularities Plaintiffs allege in this case are significantly less egregious in nature and magnitude and thus do not support a strong inference that nondisclosure of the correct numbers was the product of a deliberate or reckless effort by the Individual Defendants to defraud investors. Alleged inaccuracies stemming from GAAP violations at Intrenet include: (1) unreconciled and uneliminated inter-company transactions totaling $600,000 by the end of 1999 that, had they been properly

14

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

accounted for, would have reduced Intrenet's 1999 pre-tax operating income of $750,000 to $150,000; (2) at least

$200,000 in unrecorded expenses resulting from the ADS subsidiary's failure to record normal day-to-day operating

expenses as they occurred; (3) $600,000 in underreported expenses due to failure to adequately reserve for

uncollectible accounts receivable resulting in an amplified accounts receivable balance (e.g., during the year ending

December 31, 1999, Intrenet's net accounts receivable increased by approximately $4.4 million, or 14%, but its

operating revenues increased by only 8%); and (4) failure to record an impairment loss in the carrying value of

machinery and equipment assets valued at $340,000 but in reality worth nowhere near the recorded amount.  The

Complaint notes the October 18, 2000, press release reporting a possible restatement to the tune of $1.3 million in

unrecorded expenses at ADS and alleges that improper accounting practices caused Intrenet to report a pre-tax 1999

operating income of $750,000 when in fact it should have reported an operating loss of approximately $50,000.

    These alleged accounting and reporting problems do not resemble the pervasive and egregious

manipulations found to support a strong inference of scienter in other cases.  Intrenet operated one of the largest

trucking fleets in the country, with over $280 million in revenue and $75 million in total assets in 1999.  Moreover,

the Company did disclose that it lost over $4.8 million in 1999, compared with a gain of $2.8 million in 1998, and

that its operating income fell from over $6.3 million in 1998 to less than $1 million in 1999 on higher revenues.

Intrenet's press release announced a possible downward restatement of income of approximately $1.3 million, and

Plaintiffs allege that the Company's accounting irregularities turned the Company's 1999 operating loss of $50,000

into a $750,000 profit.  In the face of these figures, the errors Plaintiffs allege are not especially dramatic.

Accepting Plaintiffs' allegations as true, Intrenet represented itself as a barely profitable company, when in fact it

was a barely unprofitable company.  It simply cannot be said that Intrenet's accounting improprieties, by virtue of

their type and size, "should have been obvious," *Comshare*, 183 F.3d at 554, to the Individual Defendants.  These

are not "in your face facts" that "cry out" scienter.  Therefore, the alleged GAAP violations, standing alone, are

15

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

insufficient to state a securities fraud claim, and when viewed in combination with the other allegations only weakly

support an inference of scienter, if at all.

### (b)    Red Flags

Next, Plaintiffs contend that the Individual Defendants knowingly or recklessly disregarded "red flags"

indicating Intrenet's improper accounting practices, GAAP violations, and internal control deficiencies. Specific

factual allegations that a defendant ignored red flags, or warning signs that would have revealed the accounting

errors prior to their inclusion in public statements, may support a strong inference of scienter. *Comshare*, 183 F.3d

at 553-54. *See also Miller v. Material Sciences Corp.*, 9 F. Supp. 2d 925, 928-29 (N.D. Ill. 1998) ("Deliberately

ignoring 'red flags'...can constitute the sort of recklessness necessary to support § 10(b) liability."). On the other

hand, ignoring red flags may indicate that a defendant was merely negligent, not reckless. Courts typically look

for multiple, obvious red flags before drawing an inference that a defendant acted intentionally or recklessly. *See,*

*e.g., In re Health Mgmt., Inc. Secs. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997) (citing *In re Leslie Fay Cos., Inc.*,

871 F. Supp, 686, 699 (S.D.N.Y. 1995)).

In *Health Mgmt.*, the court inferred an auditor's fraudulent intent from numerous alleged red flags that

should have led the auditor to question its audit opinion, including (i) the auditor's credulous acceptance of

representations from the company that fairly obviously failed to reflect reality; (ii) the auditor's failure to follow

up on an analyst letter alerting the auditor to artificially inflated accounts receivable levels; and (iii) the auditor's

failure to exercise heightened scrutiny in response to the analyst letter and an SEC inquiry on the same subject.

*Id.* at 203. The court concluded that the allegations implied that the auditor "turned a blind eye" to the wrongdoing.

*Id.* Likewise, in *Leslie Fay* (a pre-PSLRA case), the court inferred scienter from allegations that the defendant

deliberately chose to ignore multiple red flags that would be "clearly evident" to anyone in the defendant's position.

871 F. Supp. at 699.

16

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

Red flags in this case would be circumstances that would have put the Individual Defendants on notice that Intrenet's financial statements and press releases contained material misstatements or omissions, or at least would have given them reasons to question the veracity of the statements. *Comshare*, 183 F.3d at 553. The only purported red flag Plaintiffs specifically identify in their Complaint is the allegation that during the year ended December 31, 1999, Intrenet's net accounts receivable increased by approximately $4.4 million, or 14%, but its operating revenues increased by only approximately 8%. This supposed red flag, Plaintiffs maintain, should have alerted the Individual Defendants to Intrenet's failure to adequately reserve for uncollectible accounts receivable - a failure that resulted in $600,000 of unreported expenses in 1999. The Court disagrees that these circumstances constitute a red flag sufficiently blatant that fraudulent intent can be inferred. Perhaps the Individual Defendants' handling of the alleged accounts receivable situation suggests negligence on their part, but the Complaint's allegations do not resemble in severity or number the sort that courts consider indicative of knowledge or reckless disregard.

### (c)    Access to Information

To buttress the argument that the Individual Defendants knew of or recklessly disregarded adverse information about Intrenet when making representations about the Company to the public, Plaintiffs point to their top-level positions within Company. During the putative class period, Chandler first served as Intrenet's Executive Vice President and Chief Operating Officer, and after June 12, 2000, was the Company's President and Chief Executive Officer until the end of the class period, all this time serving as a director as well. Meanwhile, Jackson was Intrenet's President and Chief Executive Officer from June 1999 to June 12, 2000, when he became Chairman of the Board of Directors. Jackson also served as a director throughout the putative class period. Plaintiffs maintain that by virtue of their positions within the Company, the Individual Defendants had access to all of Intrenet's financial information and controlled the content of all the Company's public statements and SEC filings. The Individual Defendants' access to Intrenet's financial information, Plaintiffs argue, works in favor of drawing a strong

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

inference of scienter with respect to the alleged misrepresentations or omissions in the Company's public communications.

Contrary to Plaintiffs' assertions, fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information. As even the authorities which Plaintiffs cite indicate, the Complaint must allege specific facts or circumstances suggestive of their knowledge. Without more, Plaintiffs fail to meet the PSLRA requirement to state with particularity facts giving rise to a strong inference of scienter. *See, e.g., In re Peritus Software Servs., Inc. Secs. Litig.*, 52 F. Supp. 2d 211, 228 (D. Mass. 1999) (general allegations that a defendant, through his board membership or executive position, had actual knowledge of false statements or reckless disregard for the truth are insufficient to raise strong inference of scienter). While it is true that high-level executives can be presumed to be aware of matters central to their business's operation, *In re Complete Management, Incorporated Securities Litigation*, 153 F. Supp. 2d 314, 325-36 (S.D.N.Y. 2001), in this case it cannot be said that the alleged misrepresentations or omissions pertained to central, day-to-day operational matters. Instead, they turn largely on accounting issues, predominantly at the ADS subsidiary, which the Court has already determined are relatively arcane in nature and scope. While the Individual Defendants' positions are relevant to the analysis of whether they are "control persons" for purposes of Section 20(a), on their own they do not bear strongly on the scienter analysis. Here, as in *Comshare*, Plaintiffs "allege no facts to show that [the Individual Defendants] knew or could have known of the errors, or that their regular procedures should have alerted them to the errors sooner than they actually did." 183 F.3d at 553.

**(d)    Areas of Focus**

Plaintiffs seek to draw additional support for a strong inference of the Individual Defendants' scienter by claiming that Intrenet's accounting improprieties occurred in areas of the business that the Individual Defendants had specifically identified as targets of intense focus for the Company and where they were under pressure to show success. As a basis for this proposition, Plaintiffs cite *Telxon*, 133 F. Supp. at 1029. In that case, the court

18

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

considered a variety of circumstances relevant to reaching a strong inference of scienter, including allegations of motive and opportunity, large restatements of the company's financial disclosures, and accounting manipulations of "substantial magnitude." *Id.* Another factor the court considered was "the fact that Telxon and its officers were in a very difficult position, facing unusual pressures to perform during the class period, and stood to benefit substantially from a performance record which matched the healthy ones [a company executive] continually projected to the public." *Id.* The pressures to make public statements reflecting profitable performance stemmed from "the need to stave off [another company's] take over efforts and ensuing proxy-battle." *Id.* at 1028.

Here, Plaintiffs contend that Intrenet's press releases announcing the Company's financial results touted the Individual Defendants' careful monitoring of the very areas in which Intrenet committed accounting violations. The press releases stated that "the Company has implemented a program to eliminate, where possible, expenses and liabilities that have historically been a burden to profitable operations"; "[t]he new management team has been tireless in identifying and eliminating unnecessary costs throughout the organization"; "[t]he Company has made solid strides and positive progress during what, otherwise, has been a challenging year"; and that the Company would be late in filing its 1999 10-K to analyze the impact of "recent operational trends," primarily extraordinary increases in fuel prices, on the Company's ability to meet financial covenants in its bank loan agreements.

The Court is not persuaded that the aforementioned statements in Intrenet's press releases do much to support an inference that the Individual Defendants knew or should have known about the specific accounting problems alleged in the Complaint. These are little more than statements of broad operational plans or goals - eliminating costs, reducing liabilities, improving profits, etc. These statements do not show knowledge or reckless disregard of the discrete and particularized alleged GAAP violations and control deficiencies concentrated in the ADS subsidiary.

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

### (e)    Motive and Opportunity

Next, Plaintiffs argue that the Complaint alleges that the Individual Defendants had motives and opportunities to defraud investors. These allegations, Plaintiffs maintain, when considered together with the other allegations in the Complaint, support a strong inference of knowledge or reckless disregard on the part of the Individual Defendants. The Complaint's motive allegations include: (1) the improper accounting practices helped to mask the Company's deteriorating operating results and forestall its impending default under certain financial covenants of its bank loan agreement; (2) the Individual Defendants sought to reduce the impact of a spike in fuel costs in the first quarter of 2000 by reporting consolidated financial statements that incorporated artificially inflated net income and earnings of the ADS subsidiary; (3) the Company was motivated to inflate the value of its accounts receivable because borrowings under its $32 million credit facility, which the Company obtained in February 2000, were determined by a formula tied to the Company's eligible accounts receivable as defined in the credit agreement. In addition, Plaintiffs allege that the Individual Defendants had other motives to artificially inflate Intrenet's stock price, including: (1) to protect themselves and their investment in the Company; (2) to protect and enhance their executive positions and the substantial compensation and prestige obtained thereby; and (3) to allow Jackson to engage in self-dealing transactions from which he reaped profits, wherein Intrenet leased tractor trailers from a leasing company that purchased the trucks from a dealership affiliated with Jackson. Also, the Complaint alleges that Chandler was motivated to disseminate materially false and misleading financial statements in order to receive a bonus based on a percentage of net income before taxes, up to a maximum of $500,000. Finally, the Complaint alleges that the Individual Defendants had opportunities to participate in fraud due to their positions as the highest ranking officers of Intrenet who controlled the content of the Company's press releases and public filings.

"[T]he bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter." *Comshare*, 183 F.3d at 551. However, "[w]hile it is true that motive and opportunity are not substitutes for a showing of recklessness, they can be catalysts to fraud and so serve as external markers to the

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

required state of mind." *Helwig*, 251 F.3d at 550. "[F]acts regarding motive and opportunity may be relevant to

pleading circumstances from which a strong inference of fraudulent scienter may be inferred, and may, on occasion,

rise to the level of creating a strong inference of reckless or knowing conduct." *Comshare*, 183 F.3d at 551 (internal

quotation and citation omitted). While bare allegations of motive and opportunity, without more, are insufficient

to establish scienter, the Court must assess whether such allegations, considered in conjunction with the remainder

of Plaintiff's allegations, on the whole raise an inference of recklessness or knowing disregard. *Telxon*, 133 F. Supp.

2d at 1028.

Opportunity to commit fraud "entail[s] the means and likely prospect of achieving concrete benefits by the

means alleged." *In re Criimi Mae, Inc. Secs. Litig.*, 94 F. Supp. 2d 652, 660 (D. Md. 2000) (internal quotations and

citations omitted). With respect to the Individual Defendants' opportunities to engage in fraud, there can be little

doubt that they could have, had they wanted to, committed such acts. *See, e.g., San Leandro Emergency Med.*

*Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) ("There is no doubt that

defendants as a group had the opportunity [to manipulate stock prices]....[because they] held the highest positions

of power and authority within the company.").

The more important question in this case is whether the Complaint alleges motives on the part of the

Individual Defendants from which the Court could infer a knowing or reckless state of mind. In order to

demonstrate motive, a plaintiff must show concrete benefits that could be realized by one or more of the false

statements and wrongful nondisclosures alleged. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999). Our

review of the cases cited by the parties shows that courts distinguish motives common to corporations and

executives generally from motives to commit fraud. All corporate managers share a desire for their companies to

appear successful. That desire does not comprise a motive for fraud. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263,

268 (2d Cir. 1996) ("such a generalized motive, one which could be imputed to any publicly-owned, for-profit

endeavor, is not sufficiently concrete for purposes of inferring scienter"). Neither does an executive's desire to

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

protect his position within a company or increase his compensation. *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) ("an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers"); *Criimi Mae*, 94 F. Supp. 2d at 660 (allegations that defendants sought to "protect their executive positions," standing alone, are inadequate to plead motive). Finally, Jackson's alleged self-dealing transactions suggest no more than a general motive for Intrenet's success, not fraud; moreover, the allegedly fraudulent SEC filings to which Plaintiffs refer expressly disclosed these transactions.

However, the allegations that the Individual Defendants were motivated to engage in fraud in order to forestall Intrenet's default of its bank loan agreement and to preserve the Company's ability to borrow pursuant to its credit facility warrant closer scrutiny. These more particularized sorts of motive allegations are more probative of scienter. For example, as part of the mix of factors contributing to an inference of scienter, the Ninth Circuit has considered a defendant's motivation to overstate a company's reported net value so as not to violate loan covenants with its lender and to improve the prospects of increasing its credit line. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000). We view the motive allegations concerning the bank loan and credit facility as suggestive of scienter, although standing alone they do not establish a strong inference. Accordingly, we will consider these allegations, along with all others, in the totality of the circumstances analysis. *See Helwig*, 251 F.3d at 551 (allegations of motive and opportunity are evaluated in the same manner as other circumstantial allegations to determine whether they produce a strong inference that the defendant acted at least recklessly).

### (f)     Absence of Inside Sales

The Complaint includes no allegations that the Individual Defendants ever took advantage of Intrenet's purportedly inflated stock prices by selling shares during the class period. The Individual Defendants point out that the allegations of fraudulent motive which courts most often recognize as support for a strong inference of scienter are allegations that insiders sold stock. Indeed, we mentioned in *Helwig* that "insider trading at a suspicious time

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

or in an unusual amount" comprises one of the "fixed constellations of facts that courts have found probative of securities fraud." 251 F.3d at 552. Conversely, courts have explained that the absence of inside sales dulls allegations of fraudulent motive. *See, e.g., In re K-tel Int'l, Inc. Secs. Litig.*, 300 F.3d 881, 894 (8th Cir. 2002) ("evidence that the individual defendants abstained from trading may undercut allegations of motive"); *In re Northern Telecom Ltd. Secs. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders, or any other evidence of pecuniary gain by company insiders at shareholders' expense, is inconsistent with an intent to defraud shareholders....Even where company insiders sell stock during the class period, scienter is not necessarily inferred.") (citing *Kalnit*, 99 F. Supp. 2d at 337 and *San Leandro Emergency Med. Group Profit Sharing Plan*, 75 F.3d at 814).

However, we have never held that the absence of insider trading defeats an inference of scienter. *Cf. Hanon v. Dataproducts. Corp.*, 976 F.2d 597, 507 (9th Cir. 1992) (scienter can be established even if officers who made misleading statements did not sell stock during the class period). What is more, Plaintiffs' motive allegations in this case are not based on a claim that the Individual Defendants sought to personally enrich themselves through sales of their own stock. *See In re Nuko Info. Sys., Inc. Secs. Litig.*, 199 F.R.D. 338, 344-45 (N.D. Cal. 2000) (when the complaint did not assert claims of insider trading, the absence of defendants' selling or trading has little bearing on determining whether plaintiffs have adequately pleaded scienter). We also reject the Individual Defendants' contention that their purchase of shares during the class period refutes any inference that they knowingly or recklessly misled the market to increase the stock's price. Plaintiffs allege, and Intrenet's 1999 10-K suggests, that the Individual Defendants bought the stock to infuse cash to the Company as a condition precedent to obtaining a new bank agreement. For these reasons, the absence of stock sales by the Individual Defendants works against but does not conclusively defeat an inference of scienter.

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

### (g)    Consultant

The Complaint alleges that in early 2000, Intrenet hired an outside consultant to investigate problems in the Company's accounting and internal control systems. The consultant allegedly discovered improprieties, ultimately leading to the October 13, 2000, press release that initiated Intrenet's collapse. Plaintiffs maintain that after the consultant was hired and discovered the problems, a strong inference that the Individual Defendants knew of or recklessly disregarded the problems is inescapable.

First of all, the Court is not willing to infer fraudulent intent from the fact that the Company hired a consultant to examine its accounting systems. If anything, this fact counters an inference that the Individual Defendants were trying to keep the alleged accounting problems hidden from view. Next, the thrust of Plaintiff's argument seems to be that the outside consultant "readily discovered" the accounting improprieties in a "short time period," and yet the Individual Defendants continued to issue materially false and misleading financial statements and press releases, and did not ultimately publicize the deficiencies to the investing public until "many months" later, on October 13, 2000. In the intervening time, Plaintiffs maintain, the Individual Defendants must have known or at best recklessly disregarded the truths the consultant unearthed. *See Danis v. USN Communications, Inc.*, 73 F. Supp. 2d 923, 939 (N.D. Ill. 1999) ("Problems readily recognized by an outsider can be presumed to be known to a company's management and directors."). Therefore, Plaintiffs urge, a strong inference of scienter is especially warranted after the consultant arrived.

The allegations regarding the consultant fail to support a strong inference of the Individual Defendants' scienter because they wholly lack factual particularity. The Complaint offers the conclusory assertion that the consultant "swiftly" uncovered the accounting irregularities, but nowhere does it provide any meaningful information regarding when or in what manner the consultant made his discoveries. The relevant issue in determining scienter is not when the accounting improprieties occurred, but rather whether and when the Individual Defendants knew about them. There is no basis in the Complaint's allegations concerning the consultant from

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

which the Court could conclude that the Individual Defendants knew anything about the problems prior to the

October 13, 2000, press release. Moreover, Plaintiffs fail to specify what the consultant learned and how he learned

it, other than offering the conclusory allegation that the consultant "discovered" Intrenet's alleged accounting

improprieties. Claims of securities fraud cannot rest on speculation and conclusory allegations. *Comshare*, 183 F.3d

at 553-54.

(h)    **Summary of Scienter Allegations Against Individual Defendants**

Plaintiffs have accumulated numerous circumstantial allegations from which they ask the Court to draw

the strong inference of scienter required for this case to move forward. In the foregoing discussion, we noted that,

while some of these allegations suggest little about the Individual Defendants' states of mind, other allegations favor

the implication that they may have known, or were reckless in not knowing, of the accounting problems at Intrenet

and its true financial condition. *See MicroStrategy*, 115 F. Supp. 2d at 649 ("Just as otherwise-unremarkable

individual points of colored paint in the aggregate become a Seurat painting, so, too, do the individual allegations

in this case - which, when viewed in isolation may or may not by themselves give rise to a 'strong inference' of

scienter - collectively paint an equally compelling picture of scienter."). However, "[a] mere reasonable inference

is insufficient to survive a motion to dismiss." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999).

Even when added up and viewed in their entirety, the ultimate inference of scienter the allegations in this case raise

is not strong - that is, the most plausible of competing inferences.

In *Helwig*, this Court set forth a non-exhaustive list of "factors usually relevant to scienter." 251 F.3d at

552. Few of these factors emerge in this case. First, there are no allegations of insider trading at a suspicious time

or in an unusual amount. Second, there are no specific allegations of a divergence between internal reports and

external statements on the same subject. The allegations regarding the outside consultant lack any detail about

when or to whom the consultant reported the information he allegedly discovered. Third, there is little temporal

proximity between the allegedly fraudulent statements and the later disclosure of inconsistent information in

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

October of 2000. Fourth, there are no allegations of bribery by a top company official. Fifth, there is no ancillary lawsuit charging fraud by the Company and the Company's quick settlement of the suit. Sixth, allegations that the Individual Defendants disregarded the most current factual information before making statements lack specific facts concerning how or when any accounting improprieties became known to them. Once again, the activities of the consultant are so vaguely described as to offer little insight into what the Individual Defendants knew or when they knew it. Seventh, the Complaint contains no allegations that accounting information was disclosed in such a way that its negative implications could only be understood by someone with a high degree of sophistication. Eighth, there are no allegations of certain directors holding a personal interest in not informing disinterested directors of a sale of stock. Finally, allegations of the Individual Defendants' self-interested motivation in the form of saving their salaries or jobs only mildly suggest scienter.

For all these reasons, the Section 10(b) and Rule 10b-5 claims against the Individual Defendants were properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.    Section 10(b) and Rule 10b-5 Claims Against Andersen**

Plaintiffs argue that the district court erred in dismissing the Section 10(b) and Rule 10b-5 claims against Andersen on the basis that the Complaint failed to adequately allege that Andersen acted with scienter. In Plaintiffs' view, the Complaint alleges facts showing that Andersen was alerted to Intrenet's internal control deficiencies and accounting errors, and thus knew of or recklessly disregarded the falsity of its certifications that its audit was performed in accordance with GAAS and that Intrenet's 1998 and 1999 financial statements were presented in conformity with GAAP. Specifically, Plaintiffs claim that Intrenet's financial statements were admittedly false, the accounting improprieties were obvious in nature and large in magnitude, numerous red flags arose to indicate the improprieties, and Andersen had access to Intrenet's confidential information. Moreover, the outside consultant allegedly quickly identified the problems once he came on board. Taken as a whole, Plaintiffs maintain, these

26

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

allegations are sufficient to raise a strong inference of Andersen's scienter but the district court mistakenly scrutinized each allegation in piecemeal fashion to reach its erroneous conclusion.

The same PSLRA pleading standards we set forth in our discussion of the Section 10(b) and Rule 10b-5 allegations against the Individual Defendants apply to the allegations against Andersen. However, the meaning of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor. *In re SmarTalk Teleservices, Inc. Secs. Litig.*, 124 F. Supp. 2d 505, 514 (S.D. Ohio 2000). Recklessness on the part of an independent auditor entails a mental state so culpable that it "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1341 (9th Cir. 1980) (auditor's recklessness "must come closer to being a lesser form of intent (to deceive) than merely a greater degree of ordinary negligence") (internal quotations omitted). Scienter "requires more than a misapplication of accounting principles. The [plaintiff] must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re Worlds of Wonder Secs. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (quoting *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)).

"When the standard of recklessness for an auditor is overlaid with the pleading requirements of the PSLRA, a simple rule emerges: to allege that an independent accountant or auditor acted with scienter, the complaint must allege specific facts showing that the deficiencies in the audit were so severe that they strongly suggest that the auditor must have been aware of the corporation's fraud." *SmarTalk*, 124 F. Supp. 2d at 514 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990) and *In re Software Toolworks, Inc.*, 50 F.3d 615, 628 (9th Cir. 1994)). "[T]o allege that an independent accountant or auditor acted with scienter, the complaint must identify

27

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored, either deliberately or recklessly." *SmarTalk*, 124 F. Supp. 2d at 515.

Once again, we examine Plaintiffs' allegations collectively to determine whether the totality of the specific facts alleged create a strong inference of scienter. *Telxon*, 133 F. Supp. 2d at 1026. The relevant allegations include that Andersen: (1) was aware of internal control deficiencies at Intrenet; (2) committed numerous GAAP and GAAS violations; (3) disregarded certain red flags; and (4) had access to Intrenet's confidential information. Addressing these allegations in turn and collectively, we conclude that the Complaint lacks allegations of specific, highly suspicious facts and circumstances that would lead us to reach a strong inference that Andersen acted with scienter when it certified Intrenet's financial statements.

### 1. Internal Control Deficiencies

Plaintiffs argue that Andersen turned a blind eye to numerous internal control deficiencies at Intrenet, which allowed accounting improprieties to continue unchecked. Yet, Plaintiffs offer no "specific, highly suspicious facts and circumstances" to support an inference that Andersen was aware of these deficiencies or recklessly disregarded them, other than the assertions that Andersen had access to Intrenet's confidential information and that the consultant quickly discovered the deficiencies. The allegations concerning the consultant are insufficiently specific to satisfy the PSLRA's requirements for pleading scienter. Nowhere does the Complaint allege facts identifying, for example, the consultant's level of access to Intrenet's financial records or how long the consultant took to reach conclusions. The Court would be remiss to infer Andersen's scienter based on the conclusory assertion that what the consultant ultimately found out, Andersen must have known or recklessly disregarded.

### 2. GAAP and GAAS Violations

Next, Plaintiffs contend that the Complaint alleges violations of GAAS and failure to detect violations of GAAP of such simple and obvious nature and large magnitude so as to support a strong inference of Andersen's scienter. It is well-settled that violations of GAAP and GAAS, standing alone, do not create an inference of

28

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

scienter, much less a strong one. *See Comshare*, 183 F.3d at 553 (citing cases). However, when the alleged accounting errors are sufficiently basic and large, their existence, in combination with other factors, may support the requisite scienter inference. *Telxon*, 133 F. Supp. 2d at 1031.

Plaintiffs point out that under APB No. 20, a restatement is an admission that financial statements were materially false at the time they were made; therefore, Plaintiffs argue, the alleged accounting errors were material and Andersen's knowledge or reckless disregard of such errors can be inferred. This line of reasoning misapprehends the nature of the scienter inquiry. To support an inference of fraudulent scienter, allegations of GAAP and GAAS violations must extend in nature and magnitude beyond merely the materiality threshold. We reject Plaintiffs' contention that Intrenet's $1.3 million in underreported expenses allegedly resulting from Andersen's auditing failures "belies any conclusion that Andersen acted merely negligently." Likewise, the allegations regarding the failure to reserve against accounts receivable do not "cry out" scienter. *MicroStrategy*, 115 F. Supp. 2d at 636-37. Taking the allegations as true, as we must, Andersen's alleged failures were not so grievous as to suggest that their work was "no audit at all." *Worlds of Wonder*, 35 F.3d at 1426. These are not the sort of "in your face" accounting violations that, without additional "specific, highly suspicious facts and circumstances," support a strong inference of scienter. *See MicroStrategy*, 115 F. Supp. 2d at 637; *SmarTalk*, 124 F. Supp. 2d at 515.

Once again, Plaintiffs point to the fact that Intrenet hired an outside consultant in early 2000 as proof that Intrenet and its auditor were aware of the alleged accounting improprieties for an extended period of time before they revealed them to investors. As we have already stated, the Complaint is largely devoid of any factual detail regarding how, when, and what the consultant discovered. An inference of scienter on this basis would be unwarranted.

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

### 3.    Red Flags

Next, Plaintiffs allege that Andersen disregarded numerous red flags that alerted it to the accounting

improprieties, suggesting Andersen harbored scienter.  A red flag creating a strong inference of scienter consists

of "[a]n egregious refusal to see the obvious, or to investigate the doubtful."  *Novak v. Kasaks*, 216 F.3d 300, 308

(2d Cir. 2000) (citation and internal quotation marks omitted).  Two of the purported red flags simply repeat the

alleged GAAP improprieties, namely, that Intrenet lacked internal controls (which the outside consultant discovered

in very little time), and that the accounting problems turned Intrenet's losses into profits.  The only genuine red flag

consists of the allegation that during the year ended December 31, 1999, although Intrenet's net accounts receivable

increased by approximately $4.4 million during that year, or approximately 14%, while its operating revenues

increased by only 8%.  Plaintiffs contend that these circumstances should have put Andersen on notice that

Intrenet's accounts receivable reserve was understated.

This supposed red flag fails to support a strong inference of scienter because Plaintiffs  make no specific

allegation that Andersen knew that certain accounts were not collectible and knowingly participated in a scheme

to hide that fact from investors.  In our judgment, a single year's difference in the ratio of the increase of receivables

to operating revenues does not make it "obvious" to an outside auditor that Intrenet's receivables reserve was

understated.

### 4.    Access to Confidential Information

Finally, Plaintiffs allege that Andersen's access to Intrenet's confidential information supports a strong

inference of scienter.  According to the Complaint, Andersen's personnel were regularly present at Intrenet's

corporate headquarters throughout the class period and had continual access to, and knowledge of, Intrenet's

confidential financial and business information.  These allegations, by themselves, are not enough to raise a strong

inference of scienter because such allegations are insufficiently concrete to support such an inference.  *See, e.g.,*

*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999) ("[S]tatement[s that] could be

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

made in relation to the auditor of every corporation" are insufficient to plead scienter, for "[i]f it were sufficient...,
it might make every auditor liable in cases of securities fraud."). However, while the mere fact that an auditor has
access to a company does not necessary mean that it was aware of alleged fraud at the company, the greater the
auditor's "access to and involvement with" the company's operations, the more support an inference of scienter takes
on. *MicroStrategy*, 115 F. Supp. 2d at 653.

Accordingly, the Court takes into account Andersen's access to Intrenet's information, but even so doing,
no strong inference of Andersen's scienter arises. Viewing in totality Andersen's access, along with the allegations
of internal control deficiencies, GAAP and GAAS violations, and red flags, we do not believe that the most
plausible inference to draw in these circumstances is that Andersen knew of or recklessly disregarded the alleged
material misstatements and omissions in Intrenet's financial statements. Plaintiffs repeatedly attempt to bolster their
allegations by pointing out that the outside consultant quickly discovered the accounting irregularities, yet they offer
almost no specific factual details regarding the consultant's work. For these reasons, the Section 10(b) and Rule
10b-5 claims against Andersen are properly dismissed.

**C.      Section 20(a) Control Person Liability Claims Against the Individual Defendants**

Plaintiffs contend that the district court erred in granting the Individual Defendants' motion for judgment
on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the Section 20(a) claims. In Plaintiffs' view,
the Section 20(a) claims should proceed despite the absence of the Company as a defendant. We conclude that the
Section 20(a) claims were properly adjudicated on the pleadings in the Individual Defendants' favor because the
Complaint fails to plead a required predicate violation of Section 10(b) or Rule 10b-5 by the Company, its
employees, or the Individual Defendants.

Section 20(a) of the Exchange Act creates a cause of action for "control person" liability, stating as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this title
> or of any rule or regulation thereunder shall also be liable jointly and severally with and to the
> same extent as such controlled person to any person to whom such controlled person is liable,

31

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

> unless the controlling person acted in good faith and did not directly or indirectly induce that act
> or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Section 20(a) thus establishes two requirements for a finding of control person liability. First,

the "controlled person" must have committed an underlying violation of the securities laws or the rules and

regulations promulgated thereunder. Second, the "controlling person" defendant in a Section 20(a) claim must have

directly or indirectly controlled the person liable for the securities law violation. "Control" is defined as "the

possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a

person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

In this case, Plaintiffs' Complaint alleges that the Individual Defendants are liable under Section 20(a) as

controlling persons of Intrenet. First, with respect to the requirement for an underlying primary violation, Plaintiffs

maintain that both the Individual Defendants and the Company violated Section 10(b) and Rule 10b-5. As for the

Individual Defendants, Plaintiffs argue that any Section 10(b) and Rule 10b-5 violations they committed should be

imputed to Intrenet, thereby establishing a primary violation on the Company's part as a controlled person. In other

words, the Individual Defendants' violations are the Company's violations; if the Individual Defendants are liable,

so too is Intrenet. As for the Company, Plaintiffs claim that the Complaint includes securities fraud allegations

against Intrenet itself. Intrenet, of course, is not a named party in this case because it is bankrupt. However,

Plaintiffs contend that a company's controlling persons do not escape liability when the company's primary liability

cannot be adjudicated due to its unavailability. Second, with respect to the control requirement, Plaintiffs argue

that the Individual Defendants are controlling persons because by virtue of their top-level positions at Intrenet they

had the power to control the Company's general business affairs and the specific activities upon which the alleged

primary violations were predicated.

As extensively discussed above, we have reviewed the Complaint *de novo* and determined that Plaintiffs

have not stated claims against the Individual Defendants under Section 10(b) and Rule 10b-5 because the Complaint

fails to adequately plead scienter. For the same reasons that the Section 10(b) and Rule 10b-5 claims against the

32

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

Individual Defendants are properly dismissed as a matter of law, those allegations cannot serve as predicates for

Section 20(a) liability. We therefore need not further examine Plaintiff's theory, which would impute the Individual

Defendants' purported violations to the Company in order to establish the requisite predicate liability of the

controlled person, and then double-back the liability onto the Individual Defendants as controlling persons under

Section 20(a).[4]

    Next, the Complaint fails to state a predicate Section 10(b) or Rule 10b-5 claim against Intrenet itself

because it fails - indeed, hardly attempts - to plead scienter on the Company's part. So far as the Court can discern,

the Complaint contains only a few sparse references to allegations against Intrenet as a Company or its employees

other than the Individual Defendants. Paragraph 36 of the Complaint states that "Intrenet employees repeatedly

recorded journal entries in violation of FCPA, without support or documentation, which the Defendants knew, or

recklessly disregarded." This allegation, standing alone, comes nowhere near to making out a claim for violation

of Section 10(b) or Rule 10b-5 on the part of the unidentified "Intrenet employees." Next, a single paragraph of

the Complaint, paragraph 96, pertains to the Company's knowledge, rather than that of the Individual Defendants.

That paragraph precisely restates the purported misrepresentations and omissions making Intrenet's press releases

and financial statements materially false and misleading that Plaintiffs allege against the Individual Defendants,

but this time claims "the Company knew of the improper accounting practices...[and] knew or reasonably should

---

    [4]Without deciding the question, we note that some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a) claims against the same defendant. "Arguably, a § 20(a) claim cannot be asserted against a defendant who is also charged with primary violation of § 10(b) and Rule 10b-5; that is, secondary liability under § 20(a) is an alternative, not a supplement, to primary liability under § 10(b) and Rule 10b-5." *Lemmer v. Nu-Kote Holding, Inc.*, No. CIV. A. 398CV0161L, 2001 WL 1112577, at *12 (N.D. Tex., Sept. 6, 2001), citing *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999) (suggesting that plaintiffs could not allege primary liability against the directors of a corporation and at the same time allege control person liability against the directors). *See also In re Capstead Mortg. Corp. Secs. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003) (quoting the aforementioned passage from *Lemmer*); 183 A.L.R. Fed. 141 §2[b] (2003) ("It is a frequent practice to plead in the alternative that a defendant is both a primary violator and a controlling person of primary violators, although, as some courts have noted, one cannot simultaneously be both.").

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

have known" of the misleading statements. This bare assertion fails to raise a strong inference of the Company's

scienter and thus fails to state a claim.

Because the Complaint fails to state an underlying securities law violation by a controlled person, we need

not address the subsequent question of whether the Individual Defendants possessed an adequate degree of control

to support a Section 20(a) claim. The district court correctly granted the Individual Defendants' motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the Section 20(a) claims.

**D.    Leave to Amend the Complaint**

Finally, Plaintiffs argue that the district court erred in dismissing the case without affording them an

opportunity to amend their Complaint. We recognize that when a motion to dismiss a complaint is granted, courts

typically permit the losing party leave to amend. However, given the circumstances of this case, leave to amend

should be denied. Plaintiffs failed to follow the proper procedure for requesting leave to amend, and even had they

done so, denial would have been appropriate so as to avoid "frustrat[ing] the purposes of the PSLRA." *See Miller*,

346 F.3d at 690.

Generally, the review of a district court's denial of a motion for leave to amend a complaint is governed by

an abuse of discretion standard. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995); *United States v. Midwest*

*Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). Review, however, is *de novo* where the reason for the

district court's denial is because the amended pleading would not withstand a motion to dismiss. *Ziegler*, 249 F.3d

at 518. In this case, the district court did not discuss or state why it declined to offer Plaintiffs an opportunity to

amend their Complaint. In fact, as the following discussion explains, there was no "motion" to deny. Accordingly,

we will review the district court's actions for abuse of discretion.

When a motion to dismiss is granted in a case not involving the PSLRA, the usual practice is to grant

plaintiffs leave to amend the complaint. Generally, leave to amend is "freely given when justice so requires."

*Morse*, 290 F.3d at 799 (6th Cir. 2002) (quoting Fed. R. Civ. P. 15(a)). However, the Supreme Court has instructed

34

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

that leave to amend is properly denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). And while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment setting we must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation. *Morse*, 290 F.3d at 800. "Thus, in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Id.*

In this case, Plaintiffs failed to follow the proper procedure for requesting leave to amend. They did not actually file a motion to amend along with an accompanying brief, as required by the local rules governing practice before the district court. Instead, they simply included the following request in their brief opposing the Defendants' motions to dismiss: "Alternatively, in the event the Court grants any part of the Defendants' motions to dismiss, plaintiffs respectfully request leave to amend their Complaint." As the D.C. Circuit has found, "a bare request in an application to a motion to dismiss – without any indication of the particular grounds on which amendment is sought, *cf.* Federal Rule of Civil Procedure 7(b) – does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993), quoted in *D.E.&J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 751 (E.D. Mich. 2003). This Court's disfavor of such a bare request in lieu of a properly filed motion for leave to amend was made clear in *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000): "What plaintiffs may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend." As the *Begala* decision reasoned in affirming the district court's dismissal of the plaintiffs' complaint with prejudice in that case,

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint....Absent such a motion, however, Defendant was entitled to a review

35

No. 02-3921
*PR Diamonds, et al. v. John P. Chandler, et al.*

of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

214 F.3d at 784 (emphasis in original).

The Complaint had already been amended once. The district court granted in part and denied in part the Individual Defendants' and Andersen's motion to dismiss on February 26, 2002. However, final judgment was not entered until nearly five months later, when the district court granted the Individual Defendants' motion for judgment on the pleadings. During the intervening time, Plaintiffs made no attempt to obtain leave to amend their Complaint. Moreover, Plaintiffs never sought to alter, set aside, or vacate the district court's judgment pursuant to Fed. R. Civ. P. 59 or 60. *See Morse*, 290 F.3d at 799 ("Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure."). In light of these procedural failings, the district court was within its discretion to withhold granting Plaintiffs an opportunity to amend the pleadings.

Our recent decision in *Miller* set forth a rule that would warrant denying Plaintiffs leave to amend even if they had followed the correct procedure. 346 F.3d 660. In that case, we held that "allowing repeated filing of amended complaints would frustrate the purpose of the PSLRA." *Id.* at 690. We considered the tension between Rule 15(a) of the Federal Rules of Civil Procedure and the PSLRA, which states that "[i]n any private action arising under this title, the court shall, on the motion of any defendant, dismiss the complaint if the [pleading] requirements...are not met." 15 U.S.C. § 78u-4(b)(3)(A). We resolved the tension in favor of the PSLRA, concluding that in light of that statute's requirements, "we think it is correct to interpret the PSLRA as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." *Id.* at 692. Moreover, "the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA." *Id.* The "purpose" of the PSLRA is to screen out lawsuits having no factual basis, to prevent harassing strike suits, and to encourage attorneys to use

*No. 02-3921*
*PR Diamonds, et al. v. John P. Chandler, et al.*

greater care in drafting their complaints. *See In re Champion Enters., Inc. Secs. Litig.*, 145 F. Supp. 2d 871, 873-74 (E.D. Mich. 2001), *aff'd* 346 F.3d 660 (6th Cir. 2003). Therefore, we affirmed the district court's decision to dismiss the complaint with prejudice for failing to meet the pleading requirements. *Champion*, 346 F.3d at 690.

In light of our holding in *Champion* and Plaintiffs' procedural shortcomings, we hold that Plaintiffs should not be given yet another opportunity to amend their Complaint, and we affirm the district court's entry of final judgment against Plaintiffs.

### IV. Conclusion

For the reasons stated above, the district court properly dismissed Plaintiffs' Section 10(b) and Rule 10b-5 claims against the Individual Defendants and Andersen. The district court also properly granted judgment on the pleadings in favor of the Individual Defendants on Plaintiffs' Section 20(a) claims. Finally, the district court did not abuse its discretion in not inviting Plaintiffs to amend their Complaint.

For the foregoing reasons, the judgments of the district court are AFFIRMED.

37